**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HERITAGE FOUNDATION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No.  23-cv-1421-MN |
| | ) | |
| DAVID WEISS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director, Federal Programs Branch

*/s/ Michael P. Clendenen*
MICHAEL P. CLENDENEN
(D.C. Bar # 1660091)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-0693
Fax: (202) 616-8460
michael.p.clendenen@usdoj.gov

Attorneys for Defendants

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................................1

II.     BACKGROUND ..................................................................................................................1

III.    LEGAL STANDARDS ........................................................................................................2

        A.      The Freedom of Information Act and *Glomar* Responses .......................................2

        B.      Summary Judgment in *Glomar* Cases....................................................................4

IV.     ARGUMENT ........................................................................................................................4

        A.      DOJ Properly Refused to Confirm or Deny the Existence of Any Records
                Responsive to Plaintiffs' FOIA Request Because that Information Is Itself
                Protected by FOIA Exemption 7(A) ......................................................................4

                1.    Exemption 7(A) Standard ............................................................................4

                2.    DOJ's Glomar Response Based on Exemption 7(A) Meets the
                      Exemption 7 Threshold Requirement ...................................................6

                3.    Confirming or Denying the Existence of Records Responsive to
                      Plaintiffs' FOIA Request Could Reasonably be Expected to Interfere with
                      Law Enforcement Proceedings ...............................................................7

        B.      DOJ Properly Refused to Confirm or Deny the Existence of Any Records
                Responsive to Plaintiffs' FOIA Request Because that Information Is Itself
                Protected by FOIA Exemptions 6 and 7(C) .........................................................9

                1.    Exemptions 6 and 7(C) Standards .................................................................9

                2.    DOJ's *Glomar* Response Based on Exemption 7(C) Meets the
                      Exemption 7 Threshold Requirement ...................................................10

                3.    Confirming or Denying the Existence of Records Responsive to
                      Plaintiffs' FOIA Request Would Constitute a Significant Invasion of
                      Personal Privacy .........................................................................................10

                4.    Plaintiffs Have Failed to Identify a Public Interest in Disclosure that
                      Would Outweigh Mr. Biden's Substantial Privacy Interests.........................15

V.      CONCLUSION ...................................................................................................................20

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*ACLU v. DOJ*,
  655 F.3d 1 (D.C. Cir. 2011)..................................................................................12

*Amuso v. DOJ*,
  600 F. Supp. 2d 78 (D.D.C. 2009) .........................................................................14

*Barnard v. DHS*,
  598 F. Supp. 2d 1 (D.D.C. 2009) ...........................................................................14

*Barouch v. DOJ*,
  87 F. Supp. 3d 10 (D.D.C. 2015) .............................................................................7

*Boyd v. Criminal Div. of DOJ*,
  475 F.3d 381 (D.C. Cir. 2007)........................................................................15, 19

*Buzzfeed, Inc. v. DOJ*,
  344 F. Supp. 3d 396 (D.D.C. 2018) .........................................................................8

*Cable News Network, Inc. v. FBI*,
  298 F. Supp. 3d 124 (D.D.C. 2018) .........................................................................6

*CIA v. Sims*,
  471 U.S. 159 (1985) .................................................................................................3

*Citizens for Resp. & Ethics in Wash. v. DOJ ("CREW")*,
  No. 20-cv-0212 (EGS), 2022 WL 4598537 (D.D.C. Sept. 30, 2022).......................5

*Citizens for Resp. & Ethics in Wash. v. DOJ*,
  746 F.3d 1082 (D.C. Cir. 2014) .........................................................................6, 11

*Clemente v. FBI*,
  867 F.3d 111 (D.C. Cir. 2017)..................................................................................5

*Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  No. CV 21-2201 (RC), 2022 WL 4182189 (D.D.C. Sept. 13, 2022).........13, 14, 15

*Comp. Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*,
  72 F.3d 897 (D.C. Cir. 1996)............................................................................14, 16

*Cozen O'Connor v. U.S. Dep't of Treasury*,
  570 F. Supp. 2d 749 (E.D. Pa. 2008) .......................................................................8

*Crawford-El v. Britton*,
    523 U.S. 574 (1998) ...................................................................................................16

*Ctr. For Nat'l Sec. Studies v. DOJ*,
    331 F.3d 918 (D.C. Cir. 2003) ..........................................................................3, 5, 6

*Davis v. Dep't of Justice*,
    968 F.2d 1276 (D.C. Cir. 1992) ...............................................................................16

*DOJ v. Reporters Comm. for Freedom of Press*,
    489 U.S. 749 (1989) ...............................................................................10, 14, 15, 18

*Dunkelberger v. DOJ*,
    906 F.2d 779 (D.C. Cir. 1990) ...............................................................................11

*Eddington v. DOJ*,
    581 F. Supp. 3d 218 (D.D.C. 2022) ..........................................................................8

*Elec. Priv. Info. Ctr. v. DOJ*,
    18 F.4th 712 (D.C. Cir. 2021) ...............................................................................15

*Elec. Privacy Info. Ctr. v. NSA*,
    678 F.3d 926 (D.C. Cir. 2012) ..............................................................................3, 4

*FBI v. Abramson*,
    456 U.S. 615 (1982) ...................................................................................................5

*Fischer v. DOJ*,
    596 F. Supp. 2d 34 (D.D.C. 2009) ..........................................................................19

*Fitzgibbon v. CIA*,
    911 F.2d 755 (D.C. Cir. 1990) ...............................................................................12

*Frugone v. CIA*,
    169 F.3d 772 (D.C. Cir. 1999) ...............................................................................15

*Fund for Const. Gov't v. Nat'l Achives & Recs. Serv.*,
    656 F.2d 856 (D.C. Cir. 1981) .........................................................................12, 15

*Gardels v. CIA*,
    689 F.2d 1100 (D.C. Cir. 1982) ...............................................................................4

*Jefferson v. DOJ, Off. of Pro. Resp.*,
    284 F.3d 172 (D.C. Cir. 2002) .........................................................................5, 20

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ........................................................................................2, 3

*Judicial Watch, Inc. v. DOJ*,
   898 F. Supp. 2d 93 (D.D.C. 2012) ................................................. 10, 12, 17, 18

*Lame v. DOJ*,
   654 F.2d 917 (3d Cir. 1981) ...................................................................................9

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ..............................................................................4

*Lazar v. FBI*,
   207 F. Supp. 3d 557 (E.D. Pa. 2016) ..................................................................12

*Leonard v. U.S. Dep't of Treasury*,
   No. Civ. 10-6625 (RBK/JS), 2012 WL 813837 (D.N.J. Mar. 9, 2012) ...................8

*Leopold v. CIA*,
   106 F. Supp. 3d 51 (D.D.C. 2015) .........................................................................4

*Lindsey v. FBI*,
   490 F. Supp. 3d 1 (D.D.C. 2020) .........................................................................14

*Mapother v. DOJ*,
   3 F.3d 1533 (D.C. Cir. 1993) .................................................................................6

*McMichael v. U.S. Dep't of Def.*,
   910 F. Supp. 2d 47 (D.D.C. 2012) .........................................................................7

*Mingo v. DOJ*,
   793 F. Supp. 2d 447 (D.D.C. 2011) .....................................................................19

*Moore v. CIA*,
   666 F.3d 1330 (D.C. Cir. 2011) ...........................................................................15

*Nation Mag., Wash. Bureau v. U.S. Customs Servs.*,
   71 F.3d 885 (D.C. Cir. 1995) .................................................................. 11, 12, 13

*Nat'l Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2004) .......................................................................................*passim*

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
   879 F.2d 873 (D.C. Cir. 1989) .............................................................................19

*NLRB v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ........................................................................................6

*North v. DOJ*,
    658 F. Supp. 2d 163 (D.D.C. 2009) *order vacated in part on reconsideration*, 810 F. Supp. 2d
    205 (D.D.C. 2011)...........................................................................................11

*O'Brien v. DOJ*,
    No. 22-2335, 2023 WL 2770824 (3d Cir. Apr. 4, 2023).........................................4

*Oguaju v. United States*,
    288 F.3d 448 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970 (2004),
    *reinstated*, 378 F.3d 1115 (D.C. Cir. 2004)..........................................................19

*People for the Ethical Treatment of Animals v. Nat'l Inst. of Health ("PETA")*,
    745 F.3d 535 (D.C. Cir. 2014) ...................................................................*passim*

*People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*,
    853 F. Supp. 2d 146 (D.D.C. 2012) *aff'd in part*, No. 12-5183, 2012 WL 5896791 (D.C. Cir.
    Nov. 2, 2012), and *aff'd in part, vacated in part on other grounds*, 745 F.3d 535 (D.C. Cir.
    2014)................................................................................................. 12-13

*Pratt v. Webster*,
    673 F.2d 408 (D.C. Cir. 1982) ......................................................................5

*Prop. of People v. DOJ*,
    310 F. Supp. 3d 57 (D.D.C. 2018) .................................................................18

*Pub. Emps. for Envt'l Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*,
    740 F.3d 195 (D.C. Cir. 2014) .......................................................................5

*Pugh v. FBI*,
    793 F. Supp. 2d 226 (D.D.C. 2011) ................................................................19

*Roth v. DOJ*,
    642 F.3d 1161 (D.C. Cir. 2011) ...............................................................3, 10

*Rural Hous. All. v. Dep't of Agric.*,
    498 F.2d 73 (D.C. Cir. 1974).........................................................................7

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ...................................................................16

*Schrecker v. DOJ*,
    349 F.3d 657 (D.C. Cir. 2003).......................................................................11

*Sherman v. U.S. Dep't of Army*,
   244 F.3d 357 (5th Cir. 2001) ...................................................................................14

*Skinner v. DOJ*,
   744 F. Supp. 2d 185 (D.D.C. 2010) .........................................................................13

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*,
   510 U.S. 487 (1994) ............................................................................................10, 15

*U.S. Dep't of State v. Wash. Post Co.*,
   456 U.S. 595 (1982) ..................................................................................................9

*United States v. Biden*,
   No. 1:23 cr 0061 MN (D. Del. Sept. 14, 2023) .........................................................7

*United States v. Biden*,
   No. 2:23 cr 00599 MCS (C.D. Cal. Dec. 7, 2023) .....................................................7

*United States v. Chem. Found., Inc.*,
   272 U.S. 1 (1926) ....................................................................................................16

*Wadhwa v. Sec'y U.S. Dep't of Veterans Affs.*,
   707 F. App'x 61 (3d Cir. 2017) ........................................................................3, 4, 12

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ...............................................................................3, 4

**Statutes**

5 U.S.C. § 552 ................................................................................................*passim*

18 U.S.C. § 2421 ......................................................................................................2

**Administrative & Executive Materials**

28 C.F.R. § 16.5(e)(1)(iv) .........................................................................................17

Fed. R. Civ. P. 56 ..................................................................................................1, 4

**Periodical Materials**

Am. Bar Ass'n, ABA Standards for Criminal Justice: Prosecution and Defense Function 3–3.9
   (3d ed. 1993) ...........................................................................................................18

Pursuant to Federal Rule of Civil Procedure 56, Defendants the United States Department of Justice ("DOJ") and David C. Weiss (collectively "Defendants") submit this Motion for Summary Judgment and in support thereof state as follows:

## I.     INTRODUCTION

In this Freedom of Information Act ("FOIA") case, Plaintiffs Heritage Foundation and Mike Howell seek from DOJ records related to any investigation into violations of the Mann Act by Hunter Biden. Because confirming or denying the existence of any responsive records would reveal whether or not DOJ conducted or is conducting such an investigation into Mr. Biden, and because Mr. Biden has a significant privacy interest in that information that is not outweighed by the public's interest in disclosure, DOJ followed its standard approach and properly asserted what is known as a *Glomar* response to Plaintiffs' FOIA request based on FOIA's law enforcement exemption (Exemption 7(A)) and privacy exemptions (Exemptions 6 and 7(C)). Accordingly, DOJ is entitled to summary judgment, as the propriety of DOJ's *Glomar* response is the sole issue for resolution in this case.[1]

## II.     BACKGROUND

On July 31, 2023, Plaintiffs submitted a FOIA request to DOJ seeking:

1. All communications between the United States Attorney's Office for Delaware and Main Justice regarding potential victims in the investigation of Hunter Biden[.]

2. All records related to the compilation of potential Mann Act violations related to Robert Hunter Biden reference[d] at page 155 of the House Committee on Ways and Means' June 1, 2023 Transcribed Interview of Jospeh Ziegler.

---

[1] Defendant David C. Weiss is not a proper Defendant because FOIA gives district courts jurisdiction over complaints against an agency, not an individual. 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complaint."). The Court should therefore dismiss Mr. Weiss as a Defendant from this lawsuit.

    3.   All communications with the United States Probation Office relating to Mann Act (18 U.S.C. § 2421 et seq.) or related offenses.

    4.   Records sufficient to show all communications with potential victims concerning disposition of any charges against Robert Hunter Biden.

    5.   Records sufficient to show which DOJ component was responsible for handling victim issues related to the investigation of Robert Hunter Biden[.]

Declaration of Kara Cain ("Cain Decl.") Ex. A, at 1. In support of their request for a fee waiver, Plaintiffs claimed that "the requested information is in the public interest as this is an issue of national controversy which has been covered extensively by national broadcast media and national print media." *Id.* at 4–5. Plaintiffs did not provide a signed privacy waiver or proof of death that might authorize the release of information concerning third-party individuals.

    DOJ acknowledged Plaintiffs' FOIA request on August 3, 2023, Complaint ("Compl.") ¶ 21 (D.I. 1), and granted Plaintiffs' request for expedited processing on September 15, 2023, Cain Decl. Ex. C, at 1. Plaintiffs filed this lawsuit on December 11, 2023, alleging that Defendants had not yet produced any records in response to the request. Compl. ¶ 26. Defendants filed an answer on February 8, 2024. (D.I. 10). On April 11, 2024, DOJ issued its final response to Plaintiffs' FOIA request stating that DOJ can "neither confirm nor deny the existence of such records pursuant to 5 U.S.C. § 552(b)(6), (7)(A), and (7)(C) of the FOIA." Cain Decl. Ex. D, at 1. Plaintiffs have challenged this response. *See* Joint Status Report, at 1 (Apr. 12, 2024) (D.I. 14). The case is now ripe for summary judgment on the propriety of DOJ's *Glomar* response.

## III.    LEGAL STANDARDS

### A.    The Freedom of Information Act and *Glomar* Responses

    FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John*

*Doe Corp.*, 493 U.S. 146, 152 (1989) (quotation marks omitted). "Congress recognized, however, that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166–67 (1985). Accordingly, "FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. For Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency*, 493 U.S. at 152). As a manifestation of that balance, FOIA mandates disclosure of agency records unless the requested information falls within one of nine enumerated exemptions. *See* 5 U.S.C. § 552(b).

Normally, "agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information" if they intend to withhold the information under one of FOIA's nine exemptions. *Roth v. DOJ*, 642 F.3d 1161, 1178 (D.C. Cir. 2011). But "[i]n certain cases, merely acknowledging the existence of responsive records would itself 'cause harm cognizable under [a] FOIA exemption.'" *People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (hereinafter "*PETA*") (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (additional citation omitted)). "In that event, an agency can issue a *Glomar* response, refusing to confirm or deny its possession of responsive records." *Id.*; *see also Wadhwa v. Sec'y U.S. Dep't of Veterans Affs.*, 707 F. App'x 61, 64 (3d Cir. 2017) ("This so-called 'Glomar response' is an 'exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information[.]'" (alteration in original) (quoting *Roth*, 642 F.3d at 1178)). To justify a *Glomar* response, "[t]he agency must demonstrate that acknowledging the mere existence of responsive records would disclose exempt information." *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012); *accord Wadhwa*,

707 F. App'x at 64. In doing so, the agency's explanatory burden is not demanding. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Elec. Privacy Info. Ctr.*, 678 F.3d at 931 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). This standard applies to establishing the appropriateness of a *Glomar* response. *Wolf*, 473 F.3d at 375.

### B.     Summary Judgment

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Leopold v. CIA*, 106 F. Supp. 3d 51, 55 (D.D.C. 2015); *see also O'Brien v. DOJ*, No. 22-2335, 2023 WL 2770824, at *1 (3d Cir. Apr. 4, 2023). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"In *Glomar* cases, courts may grant summary judgment on the basis of agency affidavits that contain 'reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Elec. Privacy Info. Ctr.*, 678 F.3d at 931 (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). If a *Glomar* response is appropriate, "the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents." *PETA*, 745 F.3d at 540.

## IV.     ARGUMENT

### A.     DOJ Properly Refused to Confirm or Deny the Existence of Any Records Responsive to Plaintiffs' FOIA Request Because that Information Is Itself Protected by FOIA Exemption 7(A)

#### 1.  Exemption 7(A) Standard

FOIA Exemption 7 permits agencies to withhold "records or information compiled for law enforcement purposes," provided that the release of such records or information would satisfy any one of six enumerated conditions. 5 U.S.C. § 552(b)(7)(A)–(F); *see also Pub. Emps. for Envt'l Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 202–03 (D.C. Cir. 2014). "To determine whether records are compiled for law enforcement purposes, . . . the focus is on how and under what circumstances the requested files were compiled and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017) (citation omitted). Thus, to show that the information was compiled for a law enforcement purpose, the agency need only establish that "the investigatory activity that gave rise to the documents is 'related to the enforcement of federal laws,' and there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Jefferson v. DOJ, Off. of Pro. Resp.*, 284 F.3d 172, 177 (D.C. Cir. 2002) (quoting *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C. Cir. 1982)). "Because the DOJ is an agency specializ[ing] in law enforcement, its claim of a law enforcement purpose is entitled to deference." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003) (citation omitted). Moreover, information originally compiled for a law enforcement purpose does not lose protection under Exemption 7 when it is recompiled into a different record for administrative or FOIA processing purposes. *See FBI v. Abramson*, 456 U.S. 615, 631–32 (1982) ("[I]nformation initially contained in a record made for law enforcement purposes continues to meet the threshold requirements of Exemption 7 where that recorded information is reproduced or summarized in a new document prepared for a no[n]-law-enforcement purpose."); *Citizens for Resp. & Ethics in Wash. v. DOJ*, No. 20-cv-0212 (EGS), 2022 WL 4598537, at *5 (D.D.C. Sept. 30, 2022) ("*CREW*") (Exemption 7 applied to information "store[d] elsewhere" that was compiled into spreadsheets to fulfill FOIA request).

5

Exemption 7(A) protects records or information "compiled for law enforcement purposes" when disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "Exemption 7(A) reflects the Congress's recognition that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case.'" *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)). "To justify withholding, [an agency] must therefore demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'" *Id.* (quoting *Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)). When assessing the first prong of this analysis, courts must "'give deference to an agency's predictive judgment of the harm that will result from disclosure of information.'" *Cable News Network, Inc. v. FBI*, 298 F. Supp. 3d 124, 129 (D.D.C. 2018) (quoting *Citizens for Resp.*, 746 F.3d at 1098). The latter two prongs typically may be satisfied by pointing to a pending investigation or proceeding. *See Citizens for Resp.*, 746 F.3d at 1098.

### 2.  DOJ's *Glomar* Response Based on Exemption 7(A) Meets the Exemption 7 Threshold Requirement

If any records responsive to Plaintiffs' FOIA request existed, they all would have been compiled in connection with DOJ's law enforcement duties, *i.e.*, to further a criminal investigation. *See* Cain Decl. ¶ 9. "DOJ is an agency specializ[ing] in law enforcement," including criminal law enforcement. *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926 (quotation omitted). Plaintiffs' FOIA request seeks records related to potential violations of the Mann Act and victims of these potential violations, as well as related information. The request specifically mentions "the investigation of Hunter Biden," "potential Mann Act violations," "related offenses," and "potential victims." Cain

6

Decl. Ex. A, at 1. If DOJ possessed any such records, they would all be records "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7)(C), because they would be part of an investigation by a law enforcement agency into alleged illegal acts. *See McMichael v. U.S. Dep't of Def.*, 910 F. Supp. 2d 47, 53 (D.D.C. 2012) ("A record is compiled for law enforcement purposes when it 'focus[es] directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions.'" (quoting *Rural Hous. All. v. Dep't of Agric.*, 498 F.2d 73, 81 (D.C. Cir. 1974))); *see also Barouch v. DOJ*, 87 F. Supp. 3d 10, 27 (D.D.C. 2015) (stating that a law enforcement agency's "criminal investigation of plaintiff plainly qualifies as law enforcement activity"). Accordingly, all of the information requested in Plaintiffs' FOIA request meets the Exemption 7 threshold requirement.

### 3.   Confirming or Denying the Existence of Records Responsive to Plaintiffs' FOIA Request Could Reasonably be Expected to Interfere with Law Enforcement Proceedings

DOJ's *Glomar* response to Plaintiffs' FOIA request was appropriate because confirming or denying the existence of responsive records could reasonably be expected to interfere with law enforcement proceedings.

Confirming the existence of a single record that is responsive to Plaintiffs' FOIA request could reasonably be expected to harm any investigation of Hunter Biden for Mann Act violations. *See* Cain Decl. ¶ 10. DOJ has not officially acknowledged the existence of any such investigation of Hunter Biden.[2] *Id.* But if it were to acknowledge that it has records about potential victims in the investigation of Hunter Biden for Mann Act violations, or about potential Mann Act violations

---

[2] DOJ has acknowledged investigations into Hunter Biden for firearm and tax offenses, for which he has been publicly charged, *see* Indictment, *United States v. Biden*, No. 1:23-cr-0061-MN (D. Del. Sept. 14, 2023) (D.I. 1); Indictment, *United States v. Biden*, No. 2:23-cr-00599-MCS (C.D. Cal. Dec. 7, 2023) (D.I. 1), but not for any potential Mann Act violations. Nor has it, of course, charged Mr. Biden with violating the Mann Act.

related to Hunter Biden, as the FOIA request seeks, that would effectively acknowledge that DOJ is indeed investigating Hunter Biden for Mann Act violations. Acknowledging the existence of a pending investigation prematurely, by means of confirming the existence of records, could reasonably be expected to hinder and interfere with that investigation. *Id.* ¶ 11. Specifically, it would tip off subjects and persons of investigative interest, giving them the opportunity to take defensive actions to conceal their criminal activities, elude detection, manufacture defenses, and suppress or fabricate evidence. *Id.* It could also expose any potential witnesses or assumed victims to harassment, intimidation, or coercion; create the potential for witness tampering or intimidation; and deter the witnesses' cooperation with the Government. *Id.* ¶¶ 12–13. That concern is especially pertinent here where there has been significant media attention surrounding DOJ's investigation into Hunter Biden. All of this could hamper the Government's ability to obtain untainted testimony as well as the ability to successfully prosecute the case. *Id* ¶ 13; *see Leonard v. U.S. Dep't of Treasury*, No. Civ. 10-6625 (RBK/JS), 2012 WL 813837, at *5 (D.N.J. Mar. 9, 2012) ("The *Glomar* response has . . . been invoked . . . where information speaking to the existence of an investigation would compromise the investigation."); *Cozen O'Connor v. U.S. Dep't of Treasury*, 570 F. Supp. 2d 749, 783 (E.D. Pa. 2008) ("[D]isclosure [of the existence of an investigation] could create potential harm to the investigation, such as the danger of witness intimidation, the witness's desire to maintain confidentiality, and a concern that premature disclosure would create a chilling effect on potential witnesses and lose sources of information."); *cf. Eddington v. DOJ*, 581 F. Supp. 3d 218, 235 (D.D.C. 2022) (upholding *Glomar* response to request for records regarding terrorism investigation where confirmation of the investigation could hinder the government's ability to prevent and prosecute other terrorism crimes); *id.* (citing *Buzzfeed, Inc. v. DOJ*, 344 F. Supp. 3d 396, 404 (D.D.C. 2018), as "upholding a *Glomar* response under Exemption

7(A) because confirming whether records exist would provide criminals insight into, and allow them to thwart or impede, ongoing investigations"); *cf. also Lame v. DOJ*, 654 F.2d 917, 927 (3d Cir. 1981) (upholding a *Glomar*-like response under Exemption 7(D) to request for records that would reveal a confidential source).

Conversely, if DOJ does not have any pending investigation on this subject, DOJ's *Glomar* response is nevertheless required, because if DOJ were to invoke a *Glomar* response only when it possessed responsive records, the *Glomar* response would be interpreted as an admission that responsive records exist, thus rendering it ineffective. *See* Cain Decl. ¶ 14.

**B.    DOJ Properly Refused to Confirm or Deny the Existence of Any Records Responsive to Plaintiffs' FOIA Request Because that Information Is Itself Protected by FOIA Exemptions 6 and 7(C)**

### 1.    Exemptions 6 and 7(C) Standards

FOIA Exemptions 6 and 7(C) balance individuals' privacy interests in protecting information from disclosure against the public interest in such disclosure. Exemption 6 exempts from disclosure information from personnel, medical, or other similar files, the disclosure of which "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). The statutory language concerning files "similar" to personnel or medical files has been read broadly to encompass any "information which applies to a particular individual . . . sought from Government records." *Id.* at 602.

Exemption 7(C) exempts from disclosure records or information "compiled for law enforcement purposes," to the extent that the production of such law enforcement records or information "could reasonably be expected to constitute an unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(7)(C). This standard is less stringent than the standard under Exemption 6. *See Judicial Watch, Inc. v. DOJ*, 898 F. Supp. 2d 93, 102 (D.D.C. 2012) ("The 'harm cognizable' under both exemptions is an 'unwarranted invasion of personal privacy,' which must be 'clear[]' under Exemption 6, but need only 'reasonably be expected' under Exemption 7(C)." (citation omitted)). To determine whether an invasion of personal privacy would be unwarranted, a court must "balance the competing interests in privacy and disclosure," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004), which, under both Exemptions 6 and 7(C), requires the court to weigh the privacy interests against "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994) (quoting *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)). Where a FOIA request implicates information covered entirely under Exemption 7(C), there is "no need [for a court] to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth*, 642 F.3d at 1173.

### 2. DOJ's *Glomar* Response Based on Exemption 7(C) Meets the Exemption 7 Threshold Requirement

For the reasons explained above, *see supra* Part IV(A)(2), if DOJ had any records responsive to Plaintiffs' FOIA request, those records would meet Exemption 7's threshold requirement that the records be "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7).

### 3. Confirming or Denying the Existence of Records Responsive to Plaintiffs' FOIA Request Would Constitute a Significant Invasion of Personal Privacy

Confirming or denying that DOJ has law enforcement records related to an investigation into potential Mann Act violations by Hunter Biden would associate Mr. Biden with DOJ's

criminal investigative activities and could reasonably be expected to subject him to public scrutiny or harassment. Mr. Biden thus has significant privacy interests that would be implicated by the disclosure of whether or not the records Plaintiffs requested exist that are not outweighed by the public interest in such disclosure. *See* Cain Decl. ¶¶ 19, 22–24.

"An agency may provide a Glomar response, that is, a refusal to confirm or deny the existence of law enforcement records or information responsive to the FOIA request, on the ground that even acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy." *North v. DOJ*, 658 F. Supp. 2d 163, 171 (D.D.C. 2009), *order vacated in part on reconsideration*, 810 F. Supp. 2d 205 (D.D.C. 2011); *see Nation Mag., Wash. Bureau v. U.S. Customs Servs.*, 71 F.3d 885, 893 (D.C. Cir. 1995) (deeming a *Glomar* response appropriate "if confirming or denying the existence of the records would associate the individual named in the request with criminal activity"). Courts have "long . . . recognized that disclosing information about an individual's involvement in law enforcement proceedings may constitute an unwarranted invasion of personal privacy for purposes of Exemption 7(C)." *North*, 658 F. Supp. 2d at 172. Exemption 7(C) generally covers the "nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003); *see also Citizens for Responsibility and Ethics in Wash. V. DOJ*, 746 F.3d 1082, 1091 (D.C. Cir. 2014) (explaining that "[i]f a FOIA request is made for FBI investigative records regarding a particular individual, the FBI's mere acknowledgment that it possesses responsive records associates the individual named in the request with suspected criminal activity and therefore a *Glomar* response may be appropriate"); *Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990) ("Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses,

or investigators, in not being associated unwarrantedly with alleged criminal activity." (quotation marks omitted)); *Lazar v. FBI*, 207 F. Supp. 3d 557, 559, 566 (E.D. Pa. 2016) (upholding *Glomar* response to request for records of investigation into two murder suspects, concluding that confirming such records exist would be an invasion of the alleged suspects' personal privacy).

There is "no clearer example of an unwarranted invasion of personal privacy" than an agency's confirmation of the existence of responsive records where the confirmation alone "would announce to the world that [a specific, named individual] was a target for [a] criminal prosecution" that was not brought. *Judicial Watch*, 898 F. Supp. 2d at 104 (quoting *Fund for Const. Gov't v. Nat'l Achives & Recs. Serv.*, 656 F.2d 856, 864 (D.C. Cir. 1981) (quotation marks omitted)); *ACLU v. DOJ*, 655 F.3d 1, 7 (D.C. Cir. 2011) (noting that "the privacy interests of individuals who have been investigated but never publicly charged at all" are particularly strong); *Nation Mag.*, 71 F.3d at 894 ("[I]ndividuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation."); *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (holding that an "individual's privacy interest" is not being publicly associated with a law enforcement investigation "is quite clear"); *cf. Wadhwa*, 707 F. App'x at 64 (upholding *Glomar* response to request for employee disciplinary records).

Because Plaintiffs' FOIA request specifically seeks records related to an investigation of Mr. Biden for Mann Act violations, confirming the existence of such records would necessarily acknowledge that Mr. Biden is a subject of such an investigation. *See People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 853 F. Supp. 2d 146, 155 (D.D.C. 2012) ("[t]here is no question that a response from the agency acknowledging the existence of the records and processing the FOIA requests . . . would confirm that [the individual at issue] w[as] being or had been investigated."), *aff'd in part*, No. 12-5183, 2012 WL 5896791 (D.C. Cir. Nov. 2, 2012), and

12

*aff'd in part, vacated in part on other grounds*, 745 F.3d 535 (D.C. Cir. 2014). Such confirmation would "go[] to the heart of the privacy interest that Exemption 7(C) was designed to protect." *Id.* Associating a particular named individual with particular criminal investigative activities can reasonably be expected to subject that individual to public scrutiny or harassment. *See, e.g.*, *Skinner v. DOJ*, 744 F. Supp. 2d 185, 210 (D.D.C. 2010) ("Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure."). Accordingly, confirming or denying the existence of responsive records here would cause foreseeable harm. *See* Cain Decl. ¶¶ 19, 22.

Consistent with these principles, the DOJ has previously asserted in a *Glomar* response on the basis of Exemptions 6 and 7(C) in a case where a plaintiff sought "information from [a component of DOJ] regarding how it handled a handgun incident in 2018 allegedly involving Hunter Biden." *Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. CV 21-2201 (RC), 2022 WL 4182189, at *1 (D.D.C. Sept. 13, 2022). The district court sustained that response, reasoning that Hunter Biden "has a substantial privacy interest 'in ensuring that [his] relationship to [any] investigation[] remains secret.'" *Id.* at * 7 (quoting *PETA*, 745 F.3d at 541)). Indeed, as the Court explained, the "privacy interest [t]here [wa]s remarkably strong" because the request sought "information about a *criminal* investigation, which would directly "tar[] [Hunter Biden] with the brush of *criminal* activity." *Id.* at *10 (quoting *Nation Magazine*, 71 F.3d at 894 n.8 (emphasis in original)).

As noted above, DOJ has not acknowledged that Hunter Biden is the subject of an investigation into Mann Act violations, which is of course distinct from the acknowledged investigations into firearms and tax offenses. Nor have Plaintiffs identified any such

acknowledgement by Hunter Biden, who is the only one with the power to waive his privacy interests. *See, e.g.*, *Reporters Comm.*, 489 U.S. at 763 (recognizing, in the context of FOIA Exemption 7(C) analysis, that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person"); *Comp. Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996) (upholding the Secret Service's withholding of names and identifying information of persons appearing in responsive records under Exemption 7(C) except as to the information of individuals who had provided the Service with waivers of their individual privacy rights); *Amuso v. DOJ*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009) ("The privacy interest at stake [under Exemption 6] belongs to the individual, not the agency."); *see also Sherman v. U.S. Dep't of Army*, 244 F.3d 357, 364 (5th Cir. 2001) ("[O]nly the individual whose informational privacy interests are protected by [E]xemption 6 can effect a waiver of those privacy interests when they are threatened by an FOIA request.").

Nor can news media reports about Hunter Biden void his privacy interests. *See, e.g.*, *Codrea*, 2022 WL 4182189, at *8 (explaining that "news reports insinuating (or consistent with) an agency investigation" do not "diminish an individual's privacy interest"); *Lindsey v. FBI*, 490 F. Supp. 3d 1, 17, 19–20 (D.D.C. 2020) (affirming privacy interest under FOIA Exemption 7(C) despite individual's statements to the media). The mere "fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information." *Reporters Comm.*, 489 U.S. at 770 (citation omitted). General public conjecture about whether the targeted individuals are subject to particular investigations does not diminish these privacy interests; rather, it increases them by magnifying the public scrutiny and attendant privacy infringement that would result from revealing whether such investigations exist. *See*

*Barnard v. DHS*, 598 F. Supp. 2d 1, 12 (D.D.C. 2009) (identifying "long line of cases recognizing that individuals maintain an interest in their privacy even where some information is known about them publicly"). Indeed, a line of cases recognize "the special significance" and "material stigma" "of official acknowledgment by the agency itself." *PETA*, 745 F.3d at 542 (discussing *Frugone v. CIA,* 169 F.3d 772, 774 (D.C. Cir. 1999), and *Moore v. CIA,* 666 F.3d 1330, 1333 n.4 (D.C. Cir. 2011)). And Hunter Biden does not lose "a sense of personal privacy for purposes of Exemption 7(C) merely by being related to a prominent public official." *Codrea*, 2022 WL 4182189, at *10 (citing *Elec. Priv. Info. Ctr. v. DOJ*, 18 F.4th 712, 719 (D.C. Cir. 2021)).

### 4. Plaintiffs Have Failed to Identify a Public Interest in Disclosure that Would Outweigh Mr. Biden's Substantial Privacy Interests

Under Exemptions 6 and 7(C), once a court has determined that non-de minimus privacy interests in non-disclosure are at stake, it must balance those privacy interests against the public interest in disclosure of the requested records. *See Favish*, 541 U.S. at 174. Under the balancing analysis, the burden is on the FOIA requester, who must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." *Boyd v. Criminal Div. of DOJ*, 475 F.3d 381, 387 n.6 (D.C. Cir. 2007) (citation and quotations omitted). Moreover, the "only relevant public interest in the FOIA balancing analysis" for Exemptions 6 and 7(C) is "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Fed. Lab. Rels. Auth.*, 510 U.S. at 497 (quoting *Reporters Comm.*, 489 U.S. at 773). Where a FOIA request seeks confirmation that an individual who has not been charged with a crime has been investigated for one, the "release of this type of information represents a severe intrusion on

the privacy interest of the individual[] in question and should yield only where exceptional interests militate in favor of disclosure." *Fund for Const. Gov't*, 656 F.2d at 866.

Moreover, where "the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." *Favish*, 541 U.S. at 174. The "Government's official conduct" is accorded "a presumption of legitimacy," and, to obtain disclosure, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.*; *see also United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). In other words, the "public interest [in disclosure] is insubstantial" in any case in which "governmental misconduct is alleged as the justification for disclosure . . . unless the requester puts forward compelling evidence that the agency . . . engaged in illegal activity and shows that the information sought is necessary in order to confirm or refute that evidence." *Computer Prof'ls*, 72 F.3d at 905 (quoting *Davis v. Dep't of Justice,* 968 F.2d 1276, 1282 (D.C. Cir. 1992)); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (holding that "names . . . of private individuals appearing in files within the ambit of Exemption 7(C)" are "exempt from disclosure" unless accessing that information "is necessary in order to confirm or refute *compelling evidence* that the agency is engaged in illegal activity" (emphasis added)). This "meaningful evidentiary showing" is necessary because "[a]llegations of government misconduct are 'easy to allege and hard to disprove.'" *Favish*, 541 U.S. at 175 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998)).

Plaintiffs fail to meet this demanding standard. Plaintiffs' Complaint states that "multiple news agencies have been and continue to cover the investigation of Hunter Biden as well as the appointment of Weiss as Special Counsel" and "the controversy concerning Hunter Biden and possible Mann Act violations is 'a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence.'" Compl. ¶¶ 18–19 (quoting 28 C.F.R. § 16.5(e)(1)(iv)); *see also* Cain Decl. Ex. A, at 4–7 (similar statements in Plaintiffs' FOIA request). Plaintiffs' FOIA request states that there "is massive controversy over whether the investigation into Hunter Biden has been compromised." Cain Decl. Ex. A, at 8. In essence, Plaintiffs' public interest arguments rest on the mere suspicion that DOJ officials "acted negligently or otherwise improperly in the performance of their duties." *Favish*, 541 U.S. at 174.

As an initial matter, the information that Plaintiff indicates would be in the public interest to disclose is not at issue here. When an agency issues a *Glomar* response under FOIA Exemption 7(C), "the relevant question [is] . . . whether the public interest in merely acknowledging the existence or non-existence of a record outweighs any privacy interests implicated by that acknowledgement." *Judicial Watch*, 898 F. Supp. 2d at 106. "It is a completely separate question whether disclosing the *contents* of those alleged records would further any public interest, just as it is a separate question whether the records sought by the plaintiff would be subject to disclosure at all." *Id.*

Plaintiffs have failed to show how the asserted "public interest would be served by merely acknowledging the existence of" records responsive to the FOIA request. *Id.*; *see id.* (acknowledging that "the revelation of agency impropriety is undoubtedly in the public interest," but upholding the agency's *Glomar* response because the plaintiff has failed to articulate how the

17

agency's acknowledgement of responsive records could, alone, serve that public interest). If DOJ confirmed that no responsive records exist, that confirmation would not shed light on the "public interest" topics that Plaintiffs highlight, particularly because DOJ has not officially acknowledged that it was ever made aware of any alleged factual scenario that would prompt a Mann Act investigation. If, on the other hand, DOJ confirmed the existence of responsive records, that confirmation would only show that an investigation was conducted and that, as of today, no prosecution had come from it. But while that information, if it existed, would unquestionably implicate Mr. Biden's privacy interests (as discussed above), it would "do[] very little to 'shed light on the agency's performance of its statutory duties.'" *Judicial Watch*, 898 F. Supp. 2d at 106 (quoting *Reporters Comm.*, 489 U.S. at 773 (internal brackets omitted)). A prosecutor may decline to prosecute a case based on a myriad of factors and "for good cause consistent with the public interest." Am. Bar Ass'n, ABA Standards for Criminal Justice: Prosecution and Defense Function 3–3.9 (3d ed. 1993); *see Judicial Watch*, 898 F. Supp. 2d at 106 ("Put simply, a decision not to prosecute a person, standing alone, does very little to shed light on the agency's performance of its statutory duties." (brackets and quotation marks omitted) (citing *id.* and *Reporters Comm.*, 498 U.S. at 773)).

Plaintiffs have raised no more than "a bare suspicion" that DOJ has shirked its statutory duties. *Favish*, 541 U.S. at 174. They provide no "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.*; *see also Judicial Watch*, 898 F. Supp. 2d at 105–06 (ruling that the "unelaborated assertion" of a member of Congress that a prosecution decision was "usurped by high-ranking officials" and the "purported statement of an anonymous high-ranking source . . . claiming that the decision not to prosecute . . .

was . . . political" were insufficient to "warrant a belief by a reasonable person that the alleged Government impropriety might have occurred" (citation omitted)).

Because Plaintiffs have "give[n] no reason to think that [DOJ] . . . 'pulled its punches' on any occasion," Plaintiffs have not shown a "public interest [in disclosure] on that ground." *Prop. of People v. DOJ*, 310 F. Supp. 3d 57, 70 (D.D.C. 2018) (quoting *Favish*, 541 U.S. at 175); *see also Pugh v. FBI*, 793 F. Supp. 2d 226, 232 (D.D.C. 2011) ("Plaintiff's unsupported assertion of government wrongdoing is far less than is needed to demonstrate that the public interest . . . is likely to advance that interest.") (citations and quotations omitted); *Fischer v. DOJ*, 596 F. Supp. 2d 34, 47 n.18 (D.D.C. 2009) ("Plaintiff's speculative allegations regarding agency mistakes and bad faith do not constitute evidence of illegal activity nor do they raise an inference that the government is improperly withholding information."). Instead, Plaintiffs' proffered support for the public interest in disclosure consists only of "[u]nsubstantiated assertions of government wrongdoing." *Boyd*, 475 F.3d at 388. Such assertions are insufficient to overcome the presumption of legitimacy of official government actions. *See Favish*, 541 U.S. at 174. As a result, there is "no counterweight on the FOIA scale for the [C]ourt to balance against [Mr. Biden's] cognizable privacy interests in the requested records." *Boyd*, 475 F.3d at 388 (quotations omitted). In the absence of a cognizable public interest in disclosure, "the balancing requirement does not come into play," *Mingo v. DOJ*, 793 F. Supp. 2d 447, 456 (D.D.C. 2011), and "any countervailing interest in privacy defeats a FOIA request," *Oguaju v. United States*, 288 F.3d 448, 451 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970 (2004), *reinstated*, 378 F.3d 1115 (D.C. Cir. 2004) (citing *Nat'l Ass'n of Retired Fed. Emps. V. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) ("[S]omething . . . outweighs nothing every time.")). For this reason, Mr. Biden's significant

19

privacy interests must prevail, and the Court should uphold DOJ's invocation of a *Glomar* based on Exemptions 6 and 7(C).

Even if Plaintiffs had sufficiently established a public interest in the disclosure of whether responsive records exist, Mr. Biden's privacy interests would far outweigh that interest. *See* Cain Decl. ¶¶ 23–24. "Exemption 7(C) authorizes *Glomar* responses to comparable FOIA requests seeking information about [investigatory records concerning] particular individuals." *PETA*, 745 F.3d at 543. For example, in *PETA*, where the FOIA requestor asked for records that would confirm the agency had investigated three named researchers and asserted a "public interest in understanding the agency's investigatory processes," the court "conclude[d] that the public interest . . . fail[ed] to outweigh the researchers' substantial interest in nondisclosure." *Id.*; *see also Jefferson*, 284 F.3d at 179. Similarly, here, Mr. Biden's substantial interest in nondisclosure outweighs any public interest that might exist in DOJ confirming or denying the existence or non-existence of responsive records.

Thus, because Plaintiffs' request "by its terms—and at its core—seeks disclosure of records that would confirm that [DOJ] had investigated" Mr. Biden for Mann Act violations, and because there is no public interest that outweighs Mr. Biden's strong privacy interest in such a confirmation, Exemption 6 and "Exemption 7(C) justif[y] a *Glomar* response for any such documents." *PETA*, 745 F.3d at 541.

## V.      CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter summary judgment in their favor on all claims.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director, Federal Programs Branch

*/s/ Michael P. Clendenen*
MICHAEL P. CLENDENEN
(D.C. Bar # 1660091)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-0693
Fax: (202) 616-8460
michael.p.clendenen@usdoj.gov

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HERITAGE FOUNDATION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No.  23-cv-1421-MN |
| | ) | |
| DAVID WEISS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I, Michael Clendenen, hereby certify that on the 24th day of May 2024, I caused to be electronically filed:

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

with the Clerk of the Court using CM/ECF. Said document is available for viewing and downloading from CM/ECF.

*/s/ Michael P. Clendenen*
Michael P. Clendenen