UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HERITAGE FOUNDATION, et al.,    ) | |
|        ) | |
|     Plaintiffs,    ) | |
|        ) | |
|       v.    ) |   Civil Action No. 1:23-CV-01421-MN |
|        ) | |
| DAVID WEISS, et al.,    ) | |
|        ) | |
|     Defendants.    ) | |

## DECLARATION OF KARA CAIN

Pursuant to 28 U.S.C. § 1746, I, Kara Cain, declare the following to be a true and correct statement of facts:

1.      I am an Attorney-Advisor with the Freedom of Information Act/Privacy Act ("FOIA/PA") staff of the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ").  In my capacity as Attorney-Advisor, I act as a liaison with other divisions of DOJ in responding to requests and litigation filed under both FOIA, 5 U.S.C. § 552, and the Privacy Act of 1972, 5 U.S.C. §552a.  I also review FOIA/PA requests for access to records located in this office and the 94 districts of the United States Attorney's Offices ("USAOs") and the case files arising therefrom, review correspondence related to requests, review searches conducted in response to requests, and prepare EOUSA responses to ensure compliance with FOIA/PA regulations, 28 C.F.R. §§ 16.3 *et. seq.* and §§ 16.40 *et seq.*, and 5 U.S.C. § 552 and 5 U.S.C. § 552a.

2.      Due to the nature of my official duties as Attorney-Advisor, I am familiar with the procedures followed by this office in responding to the FOIA request from Plaintiffs, Heritage Foundation et al.  Additionally, I have reviewed the complaint which this Declaration addresses.

3.     The purpose of this Declaration is to provide the Court with information regarding EOUSA's response to Plaintiffs' FOIA request.

4.     The statements contained in this Declaration are based upon my personal knowledge, information provided to me in my official capacity as an Attorney-Advisor, and conclusions and determinations reached and made in accordance therewith.

## ADMINISTRATIVE HISTORY

5.     On August 1, 2023, EOUSA received a FOIA request from Heritage Foundation, which had been sent to USAO-Delaware ("USAO-DE") on July 31, 2023. **See Exhibit A.** The FOIA request sought:

1. All communications between the United States Attorney's Office for Delaware and Main Justice regarding potential victims in the investigation of Hunter Biden[.]

2. All records related to the compilation of potential Mann Act violations related to Robert Hunter Biden reference[d] at page 155 of the House Committee on Ways and Means' June 1, 2023 Transcribed Interview of Jospeh Ziegler.

3. All communications with the United States Probation Office relating to Mann Act (18 U.S.C. § 2421 et seq.) or related offenses.

4. Records sufficient to show all communications with potential victims concerning disposition of any charges against Robert Hunter Biden.

5. Records sufficient to show which DOJ component was responsible for handling victim issues related to the investigation of Robert Hunter Biden[.]

6.     EOUSA assigned the request number EOUSA-2023-002837 and on August 4, 2023, directed USAO-DE to conduct a search for responsive records. On September 15, 2023, EOUSA provided a status update to Plaintiff indicating the FOIA Office was awaiting a search

response from the appropriate district. **See Exhibit B.** EOUSA also granted Plaintiffs' request

for expedited processing, via letter, on September 15, 2023. **See Exhibit C.**

7.      EOUSA issued a final "Glomar" response pursuant to Exemptions 7(A), 6, and

7(C) of the FOIA, neither confirming nor denying the existence of records, on April 11, 2024.

**See Exhibit D.**

### **EXEMPTION 5 U.S.C. §552(b)(7)(A)**

8.      FOIA Exemption 7(A) protects records or information "compiled for law

enforcement purposes" when disclosure "could reasonably be expected to interfere with

enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Information may be withheld pursuant to

Exemption 7(A) when it is established that (1) the information relates to pending or prospective

investigations or other enforcement proceedings, and (2) disclosure of the information could

reasonably be expected to interfere with the identified enforcement proceedings.

9.      If any records responsive to Plaintiffs' FOIA request existed, they would all have

been compiled for law enforcement purposes, *i.e.,* to further a criminal investigation.

10.     Confirming the existence of any records responsive to Plaintiffs' FOIA request

would harm any ongoing or future investigation of Hunter Biden for Mann Act violations. First,

and most obviously, it would confirm the existence of an investigation.  At present, the

Department has not officially disclosed the existence of an investigation of Hunter Biden for

Mann Act violations.  Second, confirmation would harm any pending or future investigation by

the Department.

11.     Acknowledging existence of a pending investigation, by means of confirming the

existence of records, could reasonably be expected to hinder and interfere with said

investigation. Specifically, it would tip off subjects and persons of investigative interest, thus

giving them the opportunity to take defensive actions to conceal their criminal activities, elude detection, manufacture defenses, and suppress and/or fabricate evidence.

12.     Further, confirming the existence of records could expose any potential witnesses or assumed victims to harassment, intimidation, or coercion. The safety and privacy of witnesses is of exceptional concern given the heavily reported and significant media attention surrounding this subject matter.[1]

13.     Additionally, confirmation of an investigation into Hunter Biden for Mann Act violations, through confirmation of records responsive to Plaintiffs' FOIA request, could lead to witness tampering or intimidation and deter the witnesses' cooperation with the Government. This could severely hamper the Government's ability to obtain untainted testimony as well as its ability to successfully prosecute any pending matters.

14.     Conversely, if the Department does not have any pending investigation on this subject, EOUSA's *Glomar* response is nevertheless required, because if EOUSA were to invoke a *Glomar* response only when it possessed responsive records, the *Glomar* response would be interpreted as an admission that responsive records exist, thus rendering it ineffective.

15.     Therefore, EOUSA neither confirms nor denies the existence records responsive to the Mann Act request pursuant to FOIA Exemption (b)(7)(A).

---

[1] Nava, Victor, *Federal investigators explored charging Hunter Biden for sex trafficking crimes* , New York Post, (September 29, 2023, 8:11 PM), https://nypost.com/2023/09/29/federal-investigators-explored-charging-hunter-biden-for-sex-trafficking-crimes/.
Ferrechio, Susan, *Justice Department silent on sex trafficking victims linked to Hunter Biden,* Washington Times, (October 6, 2023), https://www.washingtontimes.com/news/2023/oct/6/justice-department-silent-on-sex-trafficking-victims-/.

## EXEMPTIONS 5 U.S.C. §552(b)(6), (b)(7)(C)

16.     Processing third-party requests under FOIA, requests for records on other named individuals, often involves sensitive personal privacy considerations.

17.     An agency may refuse to confirm or deny whether the existence of law enforcement investigation records exist when the confirmation or denial of the existence of responsive records would, in and of itself, reveal exempt information.

18.     Exemption 6 protects from disclosure of records related to "personnel and medical files and similar files" the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. The term "similar files" is broadly construed to include "[g]overnment records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999). In assessing the applicability of Exemption 6, courts weight the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would [cause] a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004). Plaintiffs bear the burden of establishing that disclosure will advance the public interest. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 158 (2004). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47; *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purposes."

19.     In this instance, confirming the existence of any responsive records would invade Hunter Biden's privacy interests by confirming that he's being investigated for Mann Act violations. The public interest in confirming that records exist does not outweigh the privacy interest held by Hunter Biden.

20.     Similarly, Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" to the extent that production of the law enforcement records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Law enforcement, within the meaning of FOIA Exemption 7, includes enforcement pursuant to both civil and criminal statutes. *See, e.g., Tax Analysts v. Internal Revenue Service*, 294 F.3rd 71, 76-77 (D.C. Cir. 2002).

21.     In applying Exemption 7(C), the court "balance[s] the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).  Courts recognize that there is considerable stigma inherent in being associated with law enforcement proceedings, and accordingly "do [ ] not require a balance tilted emphatically in favor of disclosure" when reviewing 7(C) exemption claims.  *Bast v. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir.1981).

22.     As noted earlier, the Department has not officially disclosed the existence of an investigation of Hunter Biden for Mann Act violations. Confirming the existence or records, which in turn confirms the existence of an investigation, would expose Hunter Biden to an unwarranted invasion of his personal privacy, including potential irreparable harm to his reputation and career and an onslaught of additional media attention.

23.     There has been no demonstration that the public interest outweighs Mr. Biden's right to personal privacy.

24.     There is no countervailing public interest that warrants the release of information that would confirm a criminal investigation against an individual. Dissemination of that information would not help explain the government's activities or operations, but would rather reveal personal information regarding an individual that has not otherwise been made public. The need to protect an individual's privacy rights far outweighs any public need for confirmation that records exist. Even a diminished privacy interest would outweigh the absence of any cognizable public interest identified by Plaintiffs.

25.     Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this 24th day of May, 2024.

_____
Kara Cain
Attorney-Advisor
Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff

# Exhibit A



214 Massachusetts Avenue, NE
Washington, DC 20002

(202) 546-4400
heritage.org

<u>**SENT VIA: USADE.Press@usdoj.gov**</u>

July 31, 2023

Hercules Building
U.S. Attorney's Office
1313 N Market St.
Wilmington, DE 19801

Dear Public Affairs Officer:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and the implementing FOIA regulations of the Department of Justice ("DOJ"), 28 CFR Part 16, I respectfully request the following:

1. All communications between the United States Attorney's Office for Delaware and Main Justice regarding potential victims in the investigation of Hunter Biden?

2. All records related to the compilation of potential Mann Act violations related to Robert Hunter Biden reference at page 155 of the House Committee on Ways and Means' June 1, 2023 Transcribed Interview of Jospeh Ziegler.

3. All communications with the United States Probation Office relating to Mann Act (18 U.S.C. § 2421 et seq.) or related offenses.

4. Records sufficient to show all communications with potential victims concerning disposition of any charges against Robert Hunter Biden.

5. Records sufficient to show which DOJ component was responsible for handling victim issues related to the investigation of Robert Hunter Biden?

The terms "pertaining to," "referring," "relating," or "concerning" with respect to any given subject means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.



214 Massachusetts Avenue, NE
Washington, DC 20002

(202) 546-4400
heritage.org

The term "record" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following:  memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (emails), MMS or SMS text messages, instant messages, messaging systems (such as iMessage, Microsoft Teams, WhatsApp, Telegram, Signal, Google Chat, Twitter direct messages, Lync, Slack, and Facebook Messenger), contracts, cables, telexes, notations of any type of conversation, telephone call, voicemail, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electronic records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise.  By definition, a "communication" (as that term is defined herein) is also a "record" if the means of communication is any written, recorded, or graphic matter of any sort whatsoever, regardless of how recorded, and whether original or copy.

The terms "and" and "or" should be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information which might otherwise be construed to be outside its scope.  The terms "all," "any," and "each" should each be construed as encompassing any and all.  The singular includes the plural number, and vice versa.  The present tense includes the past and vice versa.  The masculine includes the feminine and neuter genders.

The term "communication" means each manner or means of disclosure or exchange of information (in the form of facts, ideas, inquiries, or otherwise), regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in an in-person meeting, by telephone, facsimile, e-mail (desktop or mobile



214 Massachusetts Avenue, NE
Washington, DC 20002

(202) 546-4400
heritage.org

device), text message, MMS or SMS message, regular mail, telexes, releases, or otherwise.

"Communications with," "communications from," and "communications between" means any communication involving the related parties, regardless of whether other persons were involved in the communication, and includes, but is not limited to, communications where one party is cc'd or bcc'd, both parties are cc'd or bcc'd, or some combination thereof.

The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, and all subsidiaries, divisions, partnerships, properties, affiliates, branches, groups, special purpose entities, joint ventures, predecessors, successors, or any other entity in which they have or had a controlling interest, and any employee, and any other units thereof.

The term "employee" means a current or former:  officer, director, shareholder, partner, member, consultant, senior manager, manager, senior associate, permanent employee, staff employee, attorney, agent (whether de jure, de facto, or apparent without limitation), advisor, representative, attorney (in law or in fact), lobbyist (registered or unregistered), borrowed employee, casual employee, consultant, contractor, de facto employee, independent contractor, joint adventurer, loaned employee, part-time employee, provisional employee, or subcontractor.

The term "Main Justice" means the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of Associate Attorney General, the Office of Legal Counsel, the Office of Legal Policy, the Office of Legislative Affair, Criminal Division, Civil Division, and the Tax Division.

"Victim" is defined as per 18 U.S.C. § 3771(e)(2).

A record bearing any notation not a part of the original text is to be considered a separate record.  A draft or non-identical copy is a separate record within the meaning of this term.

Please consider all members of a document "family" to be responsive to the request if any single "member" of that "family" is responsive, regardless of whether the "family member" in question is "parent" or "child."



214 Massachusetts Avenue, NE
Washington, DC 20002

(202) 546-4400
heritage.org

This request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to our request, our request includes all prior messages sent or received in that email chain, as well as any attachments to the email.

In the interest of expediency and to minimize the research and/or duplication burden on your staff, please send records electronically if possible. If this is not possible, please notify me before sending to the mailing address listed below. If access to this request will take longer than twenty business days, please let me know when I might receive records or be able to inspect the requested records. Please produce responsive documents as soon as they become available. In all cases, please communicate with me at the below email address.

Please comply fully with 5 U.S.C. § 552(b). Accordingly, without limitation to the foregoing, if any portion of this request is denied for any reason, please provide written notice of the records or portions of records that are being withheld and cite each specific exemption of the Freedom of Information Act on which the agency relies. Moreover, to the extent that responsive records may be withheld in part, produce all reasonably segregable portions of those records. Additionally, please provide all responsive documents even if they are redacted in full.

## Fee Waiver Request

This request is primarily and fundamentally for non-commercial purposes. As a 501(c)(3) nonprofit, Heritage Foundation does not have a commercial purpose and the release of the information requested is not in Heritage Foundation's commercial interest. Heritage Foundation's mission is to formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense. Heritage Foundation uses the information requested and analyzes it in order to educate the public through social media,[1] broadcast media[2] (traditional and nontraditional) and press releases.[3] The requested information is in the public interest as this is an issue of national controversy which has been covered extensively by national broadcast

---

[1] Heritage Foundation. [@ Heritage] (Accessed: 2023, July 31). 674.6K Followers Twitter. https://twitter.com/Heritage
[2] Fox News(Accessed: 2023, July 31). Heritage Foundation launches Conservative Oversight Project aimed at 'exposing' Biden admin, leftist policies. https://www.foxnews.com/politics/heritage-conservative-oversight-project-biden-admin-leftist-policies
[3] Heritage Foundation. (Accessed: 2023, July 31). Press. https://www.heritage.org/press.

4



214 Massachusetts Avenue, NE
Washington, DC 20002

(202) 546-4400
heritage.org

media and national print media.  Plaintiffs incorporate their justifications for expedited processing below herein.  Plaintiffs note they have filed an amicus brief on these issues in Hunter Biden's criminal case.  *See* App. C.

Because this is a request by a member of the news media for information of public interest, made in my capacity as an author for the Daily Signal[4] (a major news outlet[5]), I actively gather information of potential interest to our Daily Signal audience, and I use my editorial skills to turn raw materials into a distinct work, and I distribute that work to our Daily Signal audience through podcasts[6] or articles.  I request that you waive all applicable fees associated with this request.

If you deny this request for a fee waiver, please advise me in advance of the estimated charges if they are to exceed $50.  Please send me a detailed and itemized explanation of those charges.

### Request for Expedited Processing:

Pursuant to 28 C.F.R. 16.5(e)(1)(iv), I request expedited processing for this request.  I certify the following statement of facts in support of expedited processing to be true and correct pursuant to 28 C.F.R. § 16.5(e)(3).

### Background:

The issues of:  (1) whether Robert Hunter Biden likely violated the Mann Act and related statutes; and (2) whether the Department of Justice failed to properly investigate those offenses was put front and center at a July 19, 2023 House Committee on Oversight and Accountability Hearing with two Internal Revenue Services ("IRS") Whistleblowers.  This event was widely covered.  So to were previous references to potential Mann Act violations by Hunter Biden contained in IRS Whistleblower Transcripts released on June 22, 2023 by the House Committee on Ways and Means.  The Oversight Committee sent a follow-up letter on this topic on

---

[4]Daily Signal.  (Accessed: 2023, July 31).  Mike Howell. https://www.dailysignal.com/author/mike-howell/
[5]Daily Signal.  [@DailySignal] (Accessed: 2023, July 31).  83.7K Followers Twitter. https://twitter.com/DailySignal.
[6]Apple.  (Accessed: 2023, July 31).  The Daily Signal Podcast. https://podcasts.apple.com/us/podcast/the-daily-signal-podcast/id1313611947



214 Massachusetts Avenue, NE
Washington, DC 20002
(202) 546-4400
heritage.org

July 25, 2023 which specifically seeks much of the information sought here by August 4, 2023.

The broader issues of whether the investigation into Robert Hunter Biden was compromised is the subject of *massive* media attention.

Plaintiffs expressly incorporate and rely upon the following factual Appendices.

- **Appendix A.** Letter from the Hon. James Comer & the Hon. Marjorie Taylor Greene to Ms. Hilary Axam & Ms. Kristina Rose (June 25, 2023).[7]

- **Appendix B.** CQ Transcript of the House Oversight and Accountability's July 19, 2023 Hearing entitled *Hearing with IRS Whistleblowers About the Biden Criminal Investigation.*[8]

- **Appendix C.** Letter from Proposed *Amici*, *United States v. Biden*, No. 23-cr-61 (MN) (July 25, 2023) (ECF NO. 13).[9]

- **Appendix D.** Compilation of news articles relating to Hunter Biden and the Mann Act.[10]

- **Appendix E.** Letter to Mike Howell, dated March 27, 2023, from U.S. Department of Justice, Executive Office for the United States Attorneys Granting Expedited Processing.[11]

**Expedited Processing is Warranted under 28 C.F.R. § 16.5(e)(1)(iv).**

1.      This provision provides that expedited processing shall be granted regarding:  "A matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence."

---

[7] https://oversight.house.gov/wp-content/uploads/2023/07/Letter-re-Victims-to-DOJ-7.25.23-Final.pdf
[8] http://thf_media.s3.amazonaws.com/2023/Oversite_Project/Appendix_B_CQ-%20irs-whistleblowers.pdf
[9] https://thf_media.s3.amazonaws.com/2023/Oversite_Project/DE%20Amicus%20Brief.pdf
[10] http://thf_media.s3.amazonaws.com/2023/Oversite_Project/Appendix-D_Compilation-of-news-articles-mann-act.pdf
[11] http://thf_media.s3.amazonaws.com/2023/Oversite_Project/Appendix_E_Weiss-reqest-grant-of-expedition_title.pdf



214 Massachusetts Avenue, NE
Washington, DC 20002

(202) 546-4400
heritage.org

Courts have held that the DOJ Regulation requires the requester to show:  (1) that the request involves a "matter of widespread and exceptional media interest" (28 C.F.R. § 16.5(e)(1)(iv)); and (2) that the matter is one "in which there exists possible questions about the integrity of the government that affect public confidence" (*id.*). *See Edmonds v. FBI*, No. 02-cv-1294 (ESH), 2002 WL 32539613, *3 (D.D.C. Dec. 3, 2002).  It is not necessary to show "prejudice or a matter of current exigency to the American public."  *Id.*

First, the DOJ Regulation requires showing that the matter about which questions of integrity have been raised is the subject of widespread national media attention.  *See Am. Oversight v. DOJ*, 292 F.Supp.3d 501, 507–508 (D.D.C. 2018) (denying motion for expedited processing because general media interest in Solicitor General's nomination is insufficient to show media interest in possible ethics questions concerning the nomination).  There need not be a showing that the disclosure would shed considerable light on agency operations; only that there is "exceptional" and "widespread" media interest.  *See CREW v. DOJ*, 870 F.Supp.2d 70, 81 (D.D.C. 2012), *rev'd on other grounds*, 746 F.3d 1082 (D.C. Cir. 2014).  While the media interest need be "widespread" and "exceptional" it need not be overwhelming.  *See ACLU*, 321 F.Supp.2d at 31–32 (rejecting DOJ's position that requester's citation to what the court described as "only a handful of articles" was insufficient to show "widespread and exceptional media interest" because those articles "were published in a variety of publications and repeatedly reference the ongoing national discussion about the Patriot Act and Section 215" (second quotation added)); *Edmonds*, 2002 WL 32539613, at *3 (numerous national newspaper and network television broadcasts concerning whistleblower's allegations of security lapses in FBI translator program met test).[12]

Second, the DOJ Regulation requires showing that "'there exists *possible* questions about the government's integrity that affect public confidence.'"  *CREW v. DOJ*, 436 F.Supp.3d 354, 361 (D.D.C. 2020) (*quoting* 28 C.F.R. § 16.5(e)(1)(4)) (emphasis by Court).[13]  It does not "require the requester to prove wrongdoing by the government in order to obtain documents on an expedited basis."  *Id.* at 362.  "The primary way to determine whether such possible questions exist is by examining the

---

[12]  *Cf.* 28 C.F.R. § 16.5(e)(3) ("The existence of numerous articles published on a given subject can be helpful in establishing the requirement that there be an 'urgency to inform' the public on the topic.").
[13]  To be sure, this standard does not require expedition of any questions concerning government integrity.  *See, e.g., White v. DOJ*, 16 F.4th 539, 544 (7th Cir. 2021) (test not met in case where records sought to cast doubt on requestors' criminal conviction where requestor claimed he was subject to an elaborate government sting operation).



214 Massachusetts Avenue, NE
Washington, DC 20002
(202) 546-4400
heritage.org

state of public coverage of the matter at issue, and whether that coverage surfaces possible ethics issues so potentially significant as to reduce public confidence in governmental institutions." *Am. Oversight v. DOJ*, 292 F.Supp.3d 501, 508 (D.D.C. 2018). This is not an extraordinarily high bar. *See, e.g.*, CREW, 436 F.Supp.3d at 361 (complaint sufficient to survive a motion to dismiss where it alleged Attorney General's action regarding disclosure of Mueller Report "supported an inference that at best, the Attorney General undertook to frame the public discussion on his own terms, and at worst that he distorted the truth"); *ACLU v. DOJ*, 321 F.Supp.2d 24, 32 (D.D.C. 2004) (allegations in press that Section 215 of the Patriot Act may be unconstitutional and reports that Members of Congress have alleged abuses of Section 215 "implicate[] government integrity" and hence are sufficient to meet test); *Edmonds*, 2002 WL 32539613, at *3–4 (test met where plaintiff alleged security lapses in FBI translators program, national news covered the issue, and two Senators expressed concern regarding "the significant security issues raised by plaintiff's allegations and the integrity of the FBI").[14]

2.      It is beyond contestation that there is massive controversy over whether the investigation into Hunter Biden has been compromised. This issue has been the subject of *immense* press coverage. Requester has fully explored these issues in Appendix C and relies upon that analysis here. *See* App. C. Specifically to this point, the House Oversight Committee's July 25, 2023 letter seeks much of the same information sought here. App. A at 7–8. It also sets out in great detail why this information is so crucial and so concerning. *Id.* at 1–7. These same issues were raised during the Committees July 19, 2023 hearing. *See* App. B at 49–52. These matters have been extensively covered in the press. See App. B at 1–2, 3–5, 6–9, 10, 11–13, 14–15, 16–17, 18–20, 21–23, 24–25, 26–28, 29–30, 31–35, 36–37, 38–39, 40–45, 46–47, 48–49, 50–57, 58–60, 61–63, 64–66, 67–70, 71–74, 75–91, 92, 93, 94–95, 96–97,

---

[14] DOJ has granted expedition under the DOJ Regulation in a number of circumstances. *See, e.g.*, *CREW v. DOJ*, 870 F.Supp.2d at 81 n. 14 (expedition granted to request seeking records on FBI's closed investigation of Congressman DeLay for misconduct which did not result in charges, but received considerable media attention (subsequent history omitted)); *CREW v. DOJ*, 820 F.Supp.2d 39, 42, 46 (D.D.C. 2011) (expedition granted to request seeking information concerning possible deletion of Office of Legal Counsel emails where the possible deletion was flagged as a hindrance in an internal investigation, covered in the media, and was the subject of Congressional concerns); *Elec. Frontier Found. v. DOJ*, 565 F.Supp.2d 188, 189–91 (D.D.C. 2008) (expedition granted to request seeking information regarding storage of information obtained by National Security Letters in FBI's Data Warehouse); *CREW v. DOJ*, No. 05-cv-2078 (EGS), 2006 WL 1518964, *1 (D.D.C. June 1, 2006) (expedition granted to request concerning government's decision to seek a reduced penalty in tobacco litigation where government's decision was subject to intensive news coverage and prompted concern from "several Congressman" which caused a request for an Inspector General investigation of "improper political interference" with the decision).



214 Massachusetts Avenue, NE
Washington, DC 20002

(202) 546-4400
heritage.org

98–99, 100–105, 106–109, 110–112, 113–129, 130–132, 133–135, 136–137, 138–139, 140–153, 154–155, 156–57, 158–159, 160–162, 163–167, 168–170, 171–173, 174–190, 191–207, 208–209, 210–227, 228–229, 230–232, 233–235, 236–239, 240–241, 242–243, 244–245, 246–247, 248–249, 250–251, 252–253, 254–256, 257–259, 260–261, 262–264, 265–267, 268–269, 270–271. 272–273, 274–275, 276–277, 278–279, 280–283, 284–285, 286–287, 288–289, 290–293, 294–295, 296–297, 298–299, 300–301, 302–303, 304–305.

These matters directly raise questions "'*possible* questions about the government's integrity that affect public confidence.'"  CREW, 436 F.Supp.3d at 361 (quoting 28 C.F.R. § 16.5(e)(1)(4)) (emphasis by Court).  Start with the Committees letter.  It *directly* questions the propriety of DOJ's conduct (and it was widely reported to boot).  *See* App. A at 1, 6.  So to the July 19 Hearing.  *See* App. B.[15] Continue to the massive structural concerns over the investigation which would infect this aspect just as much as any other.  See App. C.  Move to the widespread question in the news coverage.  End with the fact that expedited processing pursuant to 28 C.F.R. § `6.5(e)(1)(4) has been granted to similar request.  *See* App. E.[16]

Thank you in advance for considering my request.   If you have any questions, or feel you need clarification of this request please contact me at oversightproject@heritage.org.

Sincerely,

Mike Howell
Senior Advisor and Author at The Daily Signal
The Heritage Foundation
214 Massachusetts Ave, NE
Washington, D.C. 20002

---

[15] http://thf_media.s3.amazonaws.com/2023/Oversite_Project/Appendix_B_CQ-%20irs-whistleblowers.pdf
[16] http://thf_media.s3.amazonaws.com/2023/Oversite_Project/Appendix_E_Weiss-reqest-grant-of-expedition_title.pdf

# Exhibit B



**U.S. Department of Justice**

Executive Office for United States Attorneys

---

Freedom of Information and Privacy Staff       *Suite 5.400, 3CON Building*       *(202) 252-6020*
                                            *175N Street, NE*
                                            *Washington, DC 20530*

September 15, 2023

VIA Email

Mike Howell
Heritage Foundation Oversight Project
214 Massachusetts Ave NE
Washington, DC  20002
noreplyoversight@heritage.org

        Re: Request Number:   EOUSA-2023-002837
        Date of Receipt:        August 01, 2023
        Subject of Request:    Mann Act

Dear Mike Howell:

        This letter is written to inform you of the current status of your pending FOIA request for records.  In order to process all requests as equitably as possible, this office has adopted a "first-in-first-out" policy of processing all incoming requests.  Your request is being handled as equitably as possible and all records which can be released will be made available at the earliest possible date.

The following is the status of your request:

**X**      Awaiting a response from the appropriate search office
☐      Search response has been received and will undergoing review according to this Office's first in/first out policy
☐      Undergoing final review by an attorney

        If you have any concern or question about this request, or any other FOIA requests, please feel free to call our office at the number above.

                            Sincerely,

                            Kevin Krebs
                            Assistant Director

# Exhibit C



**U.S. Department of Justice**

Executive Office for United States Attorneys

---

Freedom of Information and Privacy Staff

Suite 5.400, 3CON Building
175N Street, NE
Washington, DC 20530

(202) 252-6020

September 15, 2023

VIA Email

Mike Howell
Heritage Foundation Oversight Project
214 Massachusetts Ave NE
Washington, DC 20002
noreplyoversight@heritage.org

      Re: Request Number:   EOUSA-2023-002837
      Date of Receipt:      August 01, 2023
      Subject of Request:   Records Related to Hunter Biden and Mann Act Violations

Dear Mike Howell:

      In your request letter, you request expedited treatment pursuant to the standards enumerated in the Department of Justice's regulations. Expedited treatment pursuant to the first standard will be granted where not doing so "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I). See also 28 C.F.R. § 16.5(e)(1)(i) (2019). Under the second standard, you must show that there is "n urgency to inform the public about an actual or alleged Federal Government activity, if made by a person primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II). See also 28 C.F.R. § 16.5(e)(1)(ii) (2019). Under the third standard, you must show that the request involves "he loss of substantial due process rights." 28 C.F.R. § 16.5(e)(1)(iii) (2019). Under the fourth standard, you must show that the subject matter of your request is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." Id. at § 16.5(e)(1)(iv). This Office makes determinations regarding the first three standards, while the Department's Director of Public Affairs makes determinations regarding the fourth standard. See id. at § 16.5(e)(2).

      Based on the information you have provided, I have determined that your request for expedited processing should be granted. Accordingly, your request has been assigned to a Government Information Specialist in this Office and a records search has been initiated. We will respond to your request as soon as practicable

      If you are not satisfied with EOUSA's determination in response to this expedited request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account

following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

        You may contact our FOIA Public Liaison at the Executive Office for United States Attorneys (EOUSA) for any further assistance and to discuss any aspect of your request.  The contact information for EOUSA is 175 N Street, NE, Suite 5.400, Washington, DC 20530; telephone at 202-252-6020. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

                                Sincerely,

                                Kevin Krebs
                                Assistant Director

# Exhibit D



**U.S. Department of Justice**

Executive Office for United States Attorneys

---

Freedom of Information and Privacy Staff          *Suite 5.400, 3CON Building*          *(202) 252-6020*
                                                  *175 N Street, NE*                    *FAX (202) 252-6048*
                                                  *Washington, DC  20530*

April 11, 2024

VIA Email

Mike Howell
Heritage Foundation Oversight Project
214 Massachusetts Ave NE
Washington, DC  20002
noreplyoversight@heritage.org

   Re: Request Number LITG-2024-000004
   Date of Receipt:  January 16, 2024
   Subject of Request: Records related to Hunter Biden and Mann Act violations

Dear Mike Howell:

   This responds to your Freedom of Information Act (FOIA) request dated and received in this office on August 1, 2023.

   This is in response to your request for records on Hunter Biden and Mann Act violations. Please be advised that our office has decided to neither confirm nor deny the existence of such records pursuant to 5 U.S.C. § 552(b)(6), (7)(A), and (7)(C) of the FOIA. Even to acknowledge the existence of law enforcement records on another individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is our standard response to such requests and should not be taken to mean that records do, or do not, exist.

   Please be advised that we have considered the foreseeable harm standard when making this determination regarding FOIA exemptions. We reasonably foresee that acknowledgment of the existence of records, or disclosure of said records, would harm interests protected by Exemptions 6, 7(A), and 7(C). Disclosure of any information, or acknowledging the existence of records, would impede an individual's right to privacy as well as impede any potential ongoing investigations.

   For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c) (2018). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

You may contact Michael Clendenen, Federal Programs Branch Attorney, at
Michael.p.clendenen@usdoj.gov, for any further assistance and to discuss any aspect of your request.

Sincerely,

Kevin Krebs
Assistant Director